UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| James Timmerman, ) | |
| ) | C/A No.: 6:08-cv-03794-GRA |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | (Written Opinion) |
| Hartford Life and Accident ) | |
| Insurance Company ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff James Timmerman ("Plaintiff") brings this action pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover long-term disability ("LTD") benefits allegedly payable to him as a participant of a group long-term disability policy ("the Plan") administered by Hartford Life and Accident Insurance Company ("Defendant"). Plaintiff also seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

Pursuant to this Court's Specialized Management Order for ERISA cases, the Parties filed a Joint Stipulation and the administrative record on August 20, 2009. This matter is now before the Court on cross-memoranda for judgment. Plaintiff filed his memorandum on August 14, 2009, to which Defendant filed a reply on September 3, 2009. Defendant filed its memorandum on August 21, 2009, to which Plaintiff filed a reply on September 3, 2009. On October 2, 2009, Plaintiff filed a notice of supplemental authority, to which Defendant filed a reply on October

8, 2009.

Under the Joint Stipulation, the Parties agreed a hearing was unnecessary, and that this Court could dispose of this matter consistent with the Joint Stipulation, memoranda, and administrative record. The Court has thoroughly considered the submissions by the Parties, the administrative record, the Plan, and the arguments of counsel. For the reasons set forth below, the Court remands this case to Defendant, the Plan administrator, for reconsideration consistent with this Order.

### **Factual and Procedural Background**[1]

Plaintiff, a fifty-eight-year-old man who resides in Easley, South Carolina, worked as a sales manager for Republic National Distributing Company, a liquor distributorship in Columbia, South Carolina, for approximately fourteen years. (R. at 195, 205.) Plaintiff last worked as a sales manager for Defendant on November 13, 2007. (*Id*. at 3.) Through his employment, Plaintiff participated in an ERISA-governed LTD plan which is fully insured and administered by Defendant. (*Id*.) To be eligible for benefits, the Plan required that Plaintiff be continuously disabled for ninety days (an "elimination period"), and for the next twenty-four months. (*Id*. at 235, 248.)

Plaintiff submitted his initial LTD claim form on January 25, 2008, after Plaintiff had been out of work due to symptoms including shortness of breath. (R.

---

[1] This factual summary briefly reflects those facts most relevant to the issue on remand.

at 195-217.) In his initial claim submission, Plaintiff listed his occupation as "sales manager," and claimed his duties were "selling, displays, shelf, reports, and manage reps." (R. at 195.) Plaintiff's employer provided Defendant with an even more detailed description of Plaintiff's job. (*Id*. at 215-17.) It outlined the physical demands that were representative of those required to do the job. (R. at 217.) It said Plaintiff

> is regularly required to use hands to finger, handle, or feel and talk or hear. The employee is frequently required to sit and reach with hands and arms. The employee is frequently required to stand; walk; climb or balance; stoop, kneel, crouch, or crawl, taste or smell. The employee must frequently lift and/or move up to 60 pounds of products 50% of the workday. Specific vision abilities required by this job include close vision, distance vision, color vision, peripheral vision, depth perception and ability to adjust focus.

(*Id*.)

After a vocational rehabilitation clinical case manager conducted an occupational analysis, Defendant determined that Plaintiff's job was the equivalent of "Manager, Sales" in the Dictionary of Occupational Titles ("DOT") which is DOT Code 163.167-018. (R. at 26.) The summary of Defendant's occupational analysis revealed that, in comparing the job Plaintiff was performing for his employer at the time of his claim with the position of "Manager, Sales" in the general workplace, "the essential duties, environmental conditions and non-exertional requirements are equal." (R. at 27.) Defendant acknowledged that Plaintiff and his employer both described Plaintiff's actual job as more physically demanding than the DOT position of "Manager, Sales," but Defendant ultimately determined the DOT position it

selected most accurately reflected Plaintiff's job as performed in the general workplace. (*Id*. at 26-27, 159.)

In a detailed letter to Plaintiff on February 29, 2008, Defendant denied Plaintiff's claim for LTD benefits under the Plan. (R. at 157-61.) Defendant explained that based on the Plaintiff's claim form, as well as the medical and other information collected by Defendant and submitted by Plaintiff, Plaintiff was capable of performing his occupation in the general workplace because the physical requirement of the DOT position "Manager, Sales" were within Plaintiff's functional capabilities, which Plaintiff's physician claimed were sedentary. (*Id*. at 159-60.)

On March 12, 2008, Plaintiff's newly-retained attorney notified Defendant that Plaintiff was appealing its decision. (R. at 138-144.) On September 2, 2008, in addition to numerous other medical and employment-related records, Plaintiff submitted an affidavit that claimed he had been approved for Social Security disability benefits, although he did not include any documentation of these benefits. (*Id*. at 76.) On November 6, 2008, Defendant denied Plaintiff's appeal via a detailed letter sent to Plaintiff's attorney without referencing the Social Security disability benefits. (*Id*. at 61-63.)

On November 16, 2008, Plaintiff filed the instant action appealing Defendant's final determination.

## Standard of Review

In this case, the Parties agree that the Plan affords Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (*See* Joint Stipulation at 1; R. at 257.) This language clearly invokes an abuse of discretion standard. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009) ("When the plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard.")

When evaluating a plan administrator's decision for abuse of discretion, the administrator's decision must stand unless unreasonable, even if the court would have reached a different conclusion. *Booth v. Wal-Mart Stores Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). "Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995) (internal quotation marks and citation omitted). "Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In *Booth*, the Fourth Circuit identified eight nonexclusive factors that guide ERISA abuse-of-discretion review:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id*. at 342-43 (footnote omitted).

## Discussion

Defendant's decision to deny Plaintiff's LTD benefits for the twenty-four month period following Plaintiff's injury is not fully supported by the evidence given Defendant's failure to adequately consider that Plaintiff was awarded Social Security disability benefits.

In this case, the ultimate issue is whether Plaintiff was disabled from performing his occupation under the terms of the Plan. (Pl.'s Mem. at 17-22; Def.'s Mem. at 23-24.) To be disabled, Plaintiff must be unable to perform one or more of his occupation's essential duties. (R. at 248.) Additionally, the Parties agree, and the Plan clearly states, that Plaintiff's occupation means the job Plaintiff performed in the general workforce, and not the job Plaintiff performed for his specific employer. (Pl.s Reply at 4; Def.'s Mem. at 23-24.)

It seems apparent from the record that Plaintiff's employer requires Plaintiff to perform a number of physical tasks that require more than minor effort. (*See, e.g.*, r. at 217.) This case revolves around whether this less-than-minimal exertion

is representative of Plaintiff's job in the general workforce, as advocated by Plaintiff and his employer, or whether the physical requirements are unique to Plaintiff's specific job, while his occupation in the general workforce involves sedentary activities, as argued by Defendant.

In determining the nature of Plaintiff's job in the general workforce, Defendant relied almost exclusively on the Department of Labor's DOT in selecting Plaintiff's occupation. However, although Plaintiff filed an affidavit swearing he had been approved for Social Security disability benefits, Defendant never reviewed, nor did it ask Plaintiff to provide, any information regarding Plaintiff's approval for Social Security disability benefits.

In *Elliott v. Sara Lee Corp*., the Fourth Circuit explained that, in reviewing an ERISA plan's denial of disability benefits, consideration of a disability award by the Social Security Administration "should depend, in part, on the presentation of some evidence that the 'disability' definitions of the agency and Plan are similar." 190 F.3d 601, 607 (4th Cir. 1999). Here, the Social Security Administration's definition of disability tracks closely with the definition of disability in the Plan. The Social Security Administration defines disability as an impairment so severe "he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." *See* 42 U.S.C § 423(d)(2)(A). Additionally, the Fourth Circuit has made clear that phrase "unable to do his previous work" in this definition requires a claimant to show an inability

to return to his occupation in the general workplace. *DeLoatche v. Heckler* 715 F.2d 148, 151 (4th Cir. 1983). The Fourth Circuit has also held that using the DOT in Social Security disability cases is an acceptable way to determine a claimant's occupation in the general workforce.

Here, Defendant, as administrator of the Plan, used a resource often used by the Social Security Administration in assessing disability. Moreover, the Plan and the Social Security Administration use a very similar definition of disability. In fact, it would appear that a greater showing is required to show disability under the Social Security definition than the Plan's definition. *See, e.g.*, *Leagon v. Eaton Corp.*, No. CA 7:02-898-20, 2003 WL 23532381, at *3 (D.S.C. July 18, 2003) ("[A]n award of [S]ocial [S]ecurity disability benefits seems to indicate that a person is disabled from performing any occupation . . . ."). Yet, Defendant found Plaintiff was not disabled while the Social Security Administration concluded the opposite.

The contrasting Social Security opinion does not inherently render Defendant's decision denying benefits an abuse of discretion. *Elliott*, 190 F.3d at 607. However, without reviewing the Social Security records, which would shed more light on the chiefly contested issue of the nature of Plaintiff's job in the general workforce, Defendant made its decision without adequate evidence. *See id.* at 609.

Defendant claims it was not required to consider an award of Social Security benefits because, aside from Plaintiff's statement in the affidavit, there was nothing in the record reflecting an award of Social Security disability benefits. Accordingly,

Defendant cites *Elliot* for the proposition it was not required to inquire further because it was under no obligation to secure evidence. (*See* Def.'s Resp. to Supp. Auth. at 3.) Although this is true as a general rule, this rule must be read in context. As the court in *Elliot* explained:

> When a district court reviews a plan administrator's decision under the abuse of discretion standard, 'an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.' If the court believes the administrator lacked adequate evidence on which to base a decision, 'the proper course[is] to 'remand to the trustees for a new determination . . . .'"

*Elliott*, 190 F.3d at 608-09 (internal citations omitted). Accordingly, although it would be inappropriate to reverse Defendant's decision for its failure to consider or procure the Social Security information, it is within this Court's discretion to direct a remand requiring Defendant to consider this information.

The Fourth Circuit has indicated, however, that "remand should be used sparingly." *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (1985). Remand is most appropriate "where the plan itself commits the trustees to consider relevant information which they failed to consider or where [the] decision involves records that were readily available and records that trustees had agreed that they would verify." *Id*. Here, the records were readily available from Plaintiff or the Social Security Administration. Additionally, the Plan contained multiple provisions to indicate Defendant would likely obtain possession of the Social Security records, or at the very least consider their existence in its assessment. For example, the Plan required participants to apply for Social Security benefits, and it discussed how

Social Security benefits would impact the participants' ERISA benefits. (R. at 238-39, 245.)

Accordingly, in light of the *Booth* factors, Defendant lacked adequate evidence to support a decision to deny disability benefits. However, the record is not so clear as to warrant this Court directing Defendant to award Plaintiff the benefits he seeks. Moreover, the Court finds no improper motivation or bad faith on the part of Defendant such as might preclude remand.

IT IS THEREFORE ORDERED that this Court remands the matter to Defendant Hartford Life and Accident Insurance Company, as plan administrator, to reconsider its determination that Plaintiff is not entitled to long-term disability benefits by taking into account the records from the Social Security Administration granting Plaintiff disability benefits.

IT IS FURTHER ORDERED that Defendant shall issue a new decision on this matter within sixty days of entry of this Order.

**IT IS SO ORDERED.**

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

January 28, 2010
Anderson, South Carolina